United States District Court
Southern District of Texas
**ENTERED**
February 22, 2022
Nathan Ochsner, Clerk

AO 472  (Rev. 11/16)  Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
for the

Houston Division of the

Southern District of Texas

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| ) | Case No. 4:22-mj-254 |
| Israel Leon Perez ) | |
| *Defendant* ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☒ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(e)** any felony that is not otherwise a crime of violence but involves:
**(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☒ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☒ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☒ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☒ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

**OR**

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

## Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong
☒ Subject to lengthy period of incarceration if convicted
☒ Prior criminal history
☒ Participation in criminal activity while on probation, parole, or supervision
☐ History of violence or use of weapons
☐ History of alcohol or substance abuse
☒ Lack of stable employment
☐ Lack of stable residence

AO 472  (Rev. 11/16)  Order of Detention Pending Trial

☒ Lack of financially responsible sureties
☒ Lack of significant community or family ties to this district
☒ Significant family or other ties outside the United States
☐ Lack of legal status in the United States
☐ Subject to removal or deportation after serving any period of incarceration
☐ Prior failure to appear in court as ordered
☒ Prior attempt(s) to evade law enforcement
☒ Use of alias(es) or false documents
☒ Background information unknown or unverified
☐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

On February 17, 2022, the Court held a hearing to determine whether Defendant Israel Leon-Perez ("Defendant" or "Leon-Perez") and co-Defendant Lilia Aracely Alejandro-Galvan ( "Alejandro-Galvan") (collectively "Defendants") should be held in custody pending trial in accordance with the Bail Reform Act of 1984, 18 U.S.C. § 3142(f).  The Defendants are charged in a Criminal Complaint, Case No. 4:22-mj-254, pending in the Southern District of Texas, Houston Division, with possession with intent to distribute over 500 grams of a mixture or substance containing methamphetamine ("meth"), in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A)(viii). Assistant United States Attorney Jimmy Leo appeared on behalf of the United States (the "Government"); CJA Attorney Leira Gracia appeared on behalf of Defendant Alejandro-Galvan and Assistant Federal Public Defender Amr Ahmed appeared on behalf of Defendant Leon-Perez.

Defendant Leon-Perez's Background

Pretrial Services ("PTS") prepared a report after an interview of Defendant. He is 28 years old, born in Cuba, and emigrated to the United States in 2016. He entered through the Mexican border and has a citizen application in process. He has lived in Houston since 2016. Since 2019, he has resided with his partner Alejandro-Galvan in a house leased in both of their names. She has five children from other relationships, no ages or citizenship provided. His parents and sister live in Cuba. Defendant has a Cuban passport and reports no international travel since 2016. Defendant reported that he works full-time in construction but could not remember the name of his employer. PTS could not verify Defendant's information. Defendant has two arrests. In 2019, he was arrested for misdemeanor evading arrest. In 2020, he was arrested for felony fraud use or possession of identifying information. PTS was unable to determine the disposition of either charge.

PTS recommended detention.

Evidence Regarding the Pending Complaint

At the hearing, the Government offered testimony of a Special Agent ("Agent") with the Drug Enforcement Administration ("DEA"), concerning the investigation and the Defendants' subsequent arrest. The Court finds Agent's testimony to be credible. He testified to the following:

1.     Agent was familiar with Defendant and the charges leading to his arrest. Agent testified about an investigation that started with a DEA confidential source ("CS") who provided information that an unknown male ("UM") in Mexico had meth for sale in Houston. CS put the Mexican source in touch with an undercover officer ("UC").

2.     UM and UC spoke on February 5, 2022, negotiating a drug transaction. UC ordered eight kilos of meth in Houston. UM said he could deliver it at a price of $3,0000 per kilo. The sale was arranged for February 7, 2022. UC spoke to UM on February 7. UM told UC that a local courier would call UC.

3.      On the afternoon of February 7, 2022, a woman called UC to set up a meet for the drug transaction. The woman was Alejandro-Galvan. UC and Alejandro-Galvan agreed to meet at a parking lot on Little York in Houston. Alejandro-Galvan said she would be in a black Ford F-150 pickup truck. DEA set up surveillance before the scheduled meeting time. At 5:40 p.m., agents observed a black F-150 backup into a parking spot in the agreed upon lot. Surveillance observed Alejandro-Galvan exit the truck and walk into a store while talking on the phone with UC. She told UC that the drugs were in the truck and the person who would conduct the transaction was in the truck. The police then converged on the truck. Leon-Perez was the sole occupant and was sitting in the driver's seat. He had a .45-caliber pistol in a fanny pack slung over his shoulder. It was loaded with eight rounds of ammunition inside the gun, but the chamber was empty. In the back seat were eight one-gallon bags with what looked like meth inside of a cardboard box. The substance field tested positive for meth. There was a total of just over eight kilos of meth, a Schedule II controlled substance. Both Defendants were arrested.

4.      In a post-Miranda statement, Alejandro-Galvan admitted involvement in the delivery of the meth. She said that her role was to coordinate deliveries between Mexican suppliers and buyers in the U.S. She further stated that she used Leon-Perez as a courier. She did not make any statement about payment to her for her role in the transaction. Alejandro-Galvan said that she received pressure from the cartel to get involve in drug transactions and make deliveries. She owed a debt for a vehicle law enforcement seized and removed from her house in the past. Individuals in Mexico were holding her responsible for the vehicle and were requiring her to work off the debt. Alejandro-Galvan had no weapons on her person. She was compliant during the arrest. She had no drugs other than a small amount of powder on dollar bills in her purse, considered personal use.

5.      Leon-Perez said that he was paid $500 in the past for making deliveries. He did not provide any specifics about past deliveries. He joked that he should have been paid more than $500 for eight gallons of meth. Leon-Perez did not say who paid him. He indicated that he has an ongoing partnership with Alejandro-Galvan to conduct these transactions. Leon-Perez said he found the gun while doing construction and kept it. No drugs were found on him. There was not a large amount of cash on him or in the truck.

6.      Agent acknowledged that Leon-Perez is a Cuban national, which provides hm with different rights from other aliens. As a Cuban, he is not deportable because the U.S. does not deport to Cuba. According to Agent, Defendant was in the country illegally.

7.      Agent confirmed that all communications leading up to the transaction were between UC and UM and then UC and Alejandro-Galvan. Leon-Perez did not have any calls or texts with UC. UC was supposed to pay $24,000 for the meth. Alejandro-Galvan instructed UC that the person inside the truck was the person who would conduct the transaction, meaning Leon-Perez.

8.      Defendant proffered that his cousin who lives in Katy has been in the U.S. for fourteen years, eight of them in Houston. Defendant could live with her. She would be willing to sign a bond. A childhood friend who is a lawful permanent resident also would allow Defendant to live with him. None of this information was provided to PTS in time to be included in the report or verified before the hearing.

Order

Based on the allegations in the complaint, the evidence presented at hearing, and the information in the Pretrial Services report, the Court concludes as follows:

(1)     The evidence is overwhelming that Defendant committed the offenses with which he is charged, namely: possession with intent to distribute over 500 grams of a mixture or substance containing meth in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A)(viii).

(2)     Pursuant to 18 U.S.C. § 3142(e), the drug charge, which carries a minimum 10 year sentence, creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community or Defendant's appearance as required. See United States v. Trosper, 809 F.2d 1107, 1110 (5th Cir. 1987) (presumption

against pretrial release arises based on indictment's allegations).

(3)   In addition to the presumption, the Government established by clear and convincing evidence that Defendant is a danger to the community such that she should be detained pending trial. See 18 U.S.C. § 3142(f) ("[A] finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."). Defendant is charged with possession with intent to distribute. The evidence establishes that a Mexican source of supply arranged the sale of eight kilos of meth in Houston. Alejandro-Galvan was the local courier for the Mexican source, and she admitted working for the cartel as a liaison between the seller and buyer of drugs. She and Leon-Perez delivered the eight kilos of meth to UC that the Mexican source arranged. He was aware of the drugs he was delivering and admitted to engaging in similar deliveries in the past for payment. Defendant's involvement in drug trafficking large quantities of narcotics is inherently dangerous to the community. Alejandro-Galvan roped him into these transactions, but he carried a loaded weapon to the delivery. Even though the chamber was empty, the pistol contained eight rounds of ammunition, further demonstrating that he is a danger to the community. Defendant failed to produce any evidence to show that he does not pose a danger to the community.

(4)   In addition to the presumption, the Government established by a preponderance of the evidence that the Defendant is a flight risk because the penalty range for the charge at issue is for jail time of 10 years to life. Because the evidence of guilt is strong, this enhances the risk of flight. Defendant is a Cuban citizen. He claims to work construction, but it could not be verified. He owns no property and does not have any financial ties to the community. Defendant told PTS that both of his parents and sister live in Cuba, which gives him a place to flee. His cousin and childhood friend offered to let Defendant live with them, but this information was not vetted with PTS as to their qualifications. His cousin also agreed to be a surety. Again, this was not vetted with PTS. Defendant was arrested for evading arrest and for fraudulent use of another person's identification. Both charges tend to support finding that Defendant is a flight risk because he can avoid detection through fraud and has a history of evading the police. In addition, Defendant was on bond on both charges when he committed the crime charged in this case. His violation of bond conditions shows that there are no conditions this Court can impose that Defendant will follow.

(5)   Defendant has not rebutted the presumption that he is a danger to the community or a flight risk. See United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986) (to rebut this presumption, a defendant can show that something about his individual circumstances suggests that "what is true in general is not true in the particular case," including evidence of his marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in § 3142(g)(3)).

(6)   Thus, the Court finds that there are no conditions or combination of conditions that will reasonably assure safety to the community such that it cannot safely release him on bond.

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:           02/22/2022                                                        *Dena Palermo*
                                                                       United States Magistrate Judge